# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ELIJAH DEWAYNE JOUBERT, | § | |
| | § | |
| Petitioner | § | |
| | § | |
| v. | § | No. 4:13-CV-03002 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice - | § | **DEATH PENALTY CASE** |
| Correctional Institutional Division | § | |
| | § | |
| Respondent | § | |

## THIRD SUPPLEMENTAL FILING TO

## APPENDIX TO PETITION FOR WRIT OF HABEAS CORPUS BY AN INMATE IN STATE CUSTODY

Submitted By

Melissa Franklin
PO Box 667
Austin, Texas 78767
Tel:   865-599-5082
Fax:   512-309-5936
email: mfranklinlegal@gmail.com

Attorney for Elijah Dwayne Joubert

Alexander L. Calhoun
4301 W. William Cannon Dr. Ste. B-150 # 260
Austin, TX 78749
Tele: (512) 731 - 3159
Fax: (512) 233-5946
Email: alcalhoun@earthlink.net

Attorney for Elijah Dwayne Joubert

# Petition Exhibit 64

(*Ex parte Alfred Dwayne Brown*, No. 1035159-A:
Findings of Fact and Conclusions of Law, and
Opinion granting relief in *Ex parte Brown*, WR68,876-01 (Tex.Cr.App. Nov. 5, 2014)

CAUSE NO. 1035159-A

EX PARTE                                 §         IN THE 351ST DISTRICT COURT

                                         §

ALFRED DEWAYNE BROWN,                    §         HARRIS COUNTY, TEXAS
APPLICANT

## AGREED PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

Having reviewed the application for writ of habeas corpus, Respondent's Original Answer, and the supplements filed by both parties in cause no. 1035159-A; the appellate record in cause no. 1035159; the affidavits and exhibits filed by the parties in cause no. 1035159-A; and, taking judicial notice of the appellate record in *State of Texas v. Elijah Joubert*, cause no. 944756, the Court makes the following findings of fact and conclusions of law, having been guided in these findings and conclusions by the joint submission of habeas counsel for Petitioner and the Harris County District Attorney's Office:

## FINDINGS OF FACT

### ARREST AND INVESTIGATION

1.      On April 4, 2003, Alfred Dewayne Brown (the "applicant") and co-defendants Elijah Joubert and Dashan Glaspie were arrested for the April 3, 2003 capital murder committed at the Ace check cashing store, during which store clerk Alfredia Jones and Houston Police Department officer Charles Clark were killed (XXVIII R.R. at 121-2; XXX R.R. at 162-4).

2.      The applicant's co-defendants implicated the applicant as the shooter in the murder of Officer Clark (XXXI R.R. at 127, 169-172, 174).[1]

3.      On April 4, 2003, Ericka Dockery, the applicant's girlfriend with whom he was

---

[1] During Joubert's capital murder trial, the State presented testimony that Joubert told police that the applicant shot Officer Clark (Joubert XXVII R.R. at 218).

01627

living at the time of the offense, told police that the applicant was home asleep when she escorted her children to catch the bus at 6:50 a.m. and when she left for work at 8:30 a.m. on the morning of April 3, 2003; that she later called home and was told that the applicant was sick and upstairs sleeping; and, that the applicant called her at work at approximately 10:00 a.m. and she talked to him for approximately 15 minutes (XXXI R.R. at 20). *See attached Exhibit 1, April 4, 2003 statement of Ericka Jean Dockery.*

4.      On April 21, 2003, Dockery testified before a Harris County Grand Jury that the applicant was asleep on her couch when she left home at 8:30 a.m. on April 3, 2003; that at approximately 10:00 a.m., she received a call from the applicant at her place of employment where she cared for Alma Berry, an elderly woman; that Berry looked at her phone caller ID and said, "Ericka, it's your house" when the applicant called; that Dockery left work at 1:00 p.m., and returned home where she saw the applicant; and, that the applicant told Dockery that he did not feel well (XXXI R.R. at 20). *See attached Exhibit 2, Grand Jury testimony of Ericka Dockery.*

5.      The applicant and co-defendants Joubert and Glaspie were indicted for capital murder, and Glaspie agreed to testify for the State at the capital trials of Joubert and the applicant in exchange for a reduced charge of aggravated robbery and a thirty (30) year prison sentence (XXXI R.R. at 126).

TRIAL AND APPELLATE PROCEEDINGS

6.      On October 21, 2004, Brown's co-defendant Elijah Joubert was found guilty of capital murder and sentenced to death.

7.      Prior to the applicant's capital murder trial, the trial court granted the defense's motion as to exculpatory evidence in the defense's discovery motion (II R.R. at 14).

8.      The applicant was represented by trial counsel Loretta Johnson Muldrow and Robert Morrow during his capital murder trial.

9.      On October 18, 2005, the applicant was found guilty of capital murder in cause

: 01628

no. 1035159 in the 351ST District Court, and, on October 25, 2005, the trial court assessed the applicant's punishment at death after the jury answered the first and second special issues affirmatively and the third and fourth special issues negatively (XXXVIII R.R. at 6).[2]

10.    On September 24, 2008, the Court of Criminal Appeals affirmed the applicant's conviction in a published opinion. *Brown v. State*, 270 S.W.3d 564 (Tex. Crim. App. Sept. 24, 2008).

11.    On October 27, 2007, the applicant filed an Article 11.071 post-conviction habeas petition alleging, *inter alia*, that the State violated the precepts of *Brady v. Maryland*, 373 U.S. 83 (1963).

BROWN'S TRIAL EVIDENCE

12.    The State presented the following evidence regarding the instant offense at the guilt/innocence phase of the applicant's trial:

- that, on the morning of April 3, 2003, Joubert, Glaspie and the applicant gathered at the Villa Americana apartments ("VA") before driving to the Ace check cashing store for the purpose of committing an aggravated robbery (XIX R.R. at 76-86, 159);

---

[2] At the conclusion of the punishment phase of the trial, the trial court submitted the following issues to the jury:

(1) Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Alfred Dewayne Brown, would commit criminal acts of violence that would constitute a continuing threat to the society?

(2) Do you find from the evidence beyond a reasonable doubt that Alfred Dewayne Brown, the defendant himself, actually caused the death of C. Clark, on the occasion in question, or if he did not actually cause the death of C. Clark, that he intended to kill C. Clark, or that he anticipated that a human life would be taken?

(3) Do you find by a preponderance of the evidence that the defendant, Alfred Dewayne Brown, is a person with mental retardation?

(4) Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Alfred Dwayne Brown, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

3

- that the store clerk, Alfredia Jones, entered the Ace at approximately 9:39 a.m. with first Joubert and then Glaspie and the applicant entering the Ace shortly thereafter (XXXII R.R. at 140);

- that, during the course of the robbery, Jones triggered an alarm and Charles Clark, Houston Police Department, responded to the scene (XXVIII R.R. at 107, 114-5);

- that the applicant shot and fatally wounded Officer Clark when he arrived at the Ace, and Joubert shot and killed store clerk Jones (XXVIII R.R. at 117-122; XXIX R.R. at 52-3);

- that the defendants fled the scene at approximately 9:45 a.m. and drove back to the VA where they went to two to three separate apartments within the complex, spending no more than 30 to 45 minutes in the second apartment (XXIX R.R. at 161, 187-8; XXX R.R. at 75; XXXI at 174-80; XXXII R.R. at 156);

- that the defendants then separated and Brown got a ride to Ericka Dockery's apartment (XXIX R.R. at 164, 171; XXXI at 180);

- that Joubert and Glaspie were carrying cell phones on April 3, 2003; however, Brown did not have a cell phone and instead used Glaspie's cell phone to make calls that day (XXXI R.R. at 185-87; XXXII R.R. at 80-1, 103-110);

- that police quickly discovered the identities of Jones' and Clark's assailants, and Glaspie was arrested on the morning of April 4, 2003, while Joubert and Brown were arrested that afternoon; and (XXX R.R. at 162-4),

- that Glaspie agreed to testify and agreed to answer questions in return for the State agreeing to not seek the death penalty and to recommend a sentence of thirty years for aggravated robbery (XXXI R.R. at 126-7).

13.    During the applicant's trial, Ericka Dockery testified on direct examination that the applicant, along with her children and cousins, lived with her at the time of the primary offense; that she and the applicant had an argument the evening before the primary offense; that the applicant was on her couch when she left to drive her children to school the morning of the primary offense; that she returned home at approximately 7:25 a.m.

4

and the applicant was not in her apartment; that she drove to Alma Berry's house and arrived between 8:00 and 9:00 a.m.; that Berry's telephone rang after "The Price is Right" television show came on at 10:00 a.m. and the applicant was on the phone; that the applicant told Dockery that he was at the VA at "Shondo's" house and instructed her to turn on the Channel 26 news where there was a broadcast regarding the Ace shootings; that the applicant denied that he was involved in the Ace offense; that Dockery tried to call Joubert after her phone conversation with the applicant to tell Joubert to get the applicant out of her house, but no one answered her call; that the applicant was at Dockery's apartment when she arrived home around 1:30 p.m.; and that the applicant told Dockery that he did not feel well (XXXI R.R. at 31, 35-53).

14.    Dockery further testified that she visited the applicant at the Harris County jail prior to testifying before the Grand Jury; that the applicant instructed Dockery to tell the Grand Jury that he was home at 8:30 a.m. on the day of the primary offense; that Dockery received threatening phone calls before and after she testified before the Grand Jury; that Dockery subsequently visited the applicant in jail and told him she needed to know the truth about the primary offense; that Dockery asked the applicant whether he killed the lady or the cop; that the applicant put his head down and said "I was there. I was there."; and, that Dockery never talked to the applicant again (XXXI R.R. at 60-1, 71-8).

15.    During cross-examination of Ericka Dockery, trial counsel elicited testimony that the phone rang a little after 10:00 a.m. at Alma Berry's house, and that Berry looked at her caller ID and said, "It's your house" (XXXI R.R. at 46-7, 95).

16.    Alma Berry testified for the State at guilt/innocence that Dockery always arrived at her house at around 9:00 a.m.; that Berry's phone rang around 10:15 a.m. on April 3, 2003; that Berry recognized the applicant's voice when she answered the call; that the applicant asked to speak with Dockery; that Berry gave the phone to Dockery; and, that

5

Dockery then asked Berry to turn on the Channel 26 news which was broadcasting a story regarding the primary offense (XXX R.R. at 228-233).

17.     On cross-examination, trial counsel asked Berry whether she said, "It's your house," when the phone rang, and Berry testified that she did not say that (XXX R.R. at 235).

18.     Aside from the applicant's call to Berry's residence between 10:00 a.m. to 10:15 a.m., on April 3, 2003, no evidence was presented at trial of additional phone calls from Dockery's apartment to Berry's house on that day by another individual.

19.     Additionally, no evidence was presented at trial of phone calls from cell phones belonging to Joubert or Glaspie to Berry's residence on April 3, 2003.

20.     The State presented evidence through an HPD officer regarding calls that were placed and received on Glaspie's cell phone on the day of the offense, including a phone call from Ericka Dockery's landline to Glaspie's cell phone at 8:26 a.m. (XXXII R.R. at 101).

21.     Neither the State nor trial counsel presented phone records for Dockery's apartment landline or Alma Berry's home phone at trial.

22.     Trial counsel argued at guilt/innocence that the applicant was at home at the time of the primary offense; that the applicant made the 8:26 a.m. phone call to Glaspie's cell phone; and, that the applicant made the call to Berry's home phone shortly after 10:00 a.m. on April 3, 2003 (XXXIII R.R. at 64-7).

BRADY AND THE DOCKERY PHONE RECORDS

23.     On April 22, 2008, co-defendant Elijah Joubert executed an affidavit wherein he stated that the applicant was not present at and did not participate in the offense on April 3, 2003. *See attached Exhibit 3, April 22, 2008 affidavit of Elijah Joubert.*

24.     As part of the State's habeas investigation, the State asked the HPD officer who conducted the original phone records investigation to search for any documents relating

: 01632

to the case, and the officer located a box of materials at his residence relating to the phone records investigation.

25. On April 9, 2013, immediately upon receiving the box of materials from the HPD officer, which included documents relating to the phone investigation, the State sent copies of the phone documents to habeas counsel via overnight delivery.

26. Included in the located phone documents were the April 3, 2003 phone records for (713) 649-6385, the apartment landline phone records of Ericka Dockery ("Dockery phone records"), along with an Application submitted by the State to obtain the Dockery phone records from the telephone company which was signed by a Harris County district court judge on April 24, 2003. *See attached Exhibit 4, phone records; see also Petitioner's Fifth Submission of Supplemental Evidence and attached exhibits.*

27. The April 24, 2003 Application for the release of the Dockery phone records states, "[t]he release of said telephone records are material to the investigation of a criminal offense"...."an analysis of the phone's records may lead to other investigative leads." *See attached Exhibit 4, phone records; see also Petitioner's Fifth Submission of Supplemental Evidence and attached exhibits.*

28. The Dockery phone records, discovered during habeas, reflect that a call was placed from the landline at Dockery's apartment to Alma Berry's house on April 3, 2003 at 10:08 a.m. *See attached Exhibit 4, phone records; see also Petitioner's Fifth Submission of Supplemental Evidence and attached exhibits.*

29. The timing of the 10:08 a.m. call from Dockery's apartment is consistent with the trial testimony of Dockery and Berry regarding the time that the applicant called Dockery at Berry's home, specifically that the applicant called Berry's home number shortly after "The Price is Right" came on at 10:00 a.m., on April 3, 2003.

30. According to the credible affidavit of trial counsel Muldrow, the Dockery phone records were not disclosed to the defense at the time of the applicant's capital trial. *See*

7

*attached Exhibit 5, affidavit of trial counsel Loretta Johnson Muldrow.*

31.   The State's inadvertent failure to disclose Dockery's phone records to the defense at the time of trial was not a matter of bad faith.

32.   Because the Dockery phone records reflect that a call was made from Dockery's apartment to Berry's house at 10:08 a.m., and no other evidence was presented at trial of another phone call from Dockery's apartment to Berry's house on April 3rd by another individual, the Dockery phone records are favorable and material to the applicant as they support the applicant's alibi that he was at Dockery's residence the morning of the primary offense.

33.   The records of the 10:08 a.m. call were favorable and material to the applicant's alibi and defense that he was at home the morning of April 3, 2003, and not with co-defendants Joubert and Glaspie.

34.   Although the State's failure to disclose the Dockery phone records to trial counsel was inadvertent and not in bad faith, the applicant's claim meets the requirements of *Brady*.

35.   The applicant's remaining grounds for relief are rendered moot, including but not limited to the Court's previous finding that the applicant was entitled to a new punishment phase of the trial,[3] by this Court's finding that the applicant meets the requirement of *Brady* to show that material information, namely the phone records of State's witness Ericka Dockery, were inadvertently not disclosed to trial counsel.

## CONCLUSIONS OF LAW

### BRADY AND THE DOCKERY PHONE RECORDS

1.   Based on the State's inadvertent failure to provide trial counsel with the Dockery phone records, the applicant satisfies the tenets of *Brady*. Specifically, the applicant has demonstrated that the (1) the State failed to disclose evidence; (2) that the withheld

---

[3] *See* Transcript of November 15, 2012 Hearing.

: 01634

evidence was favorable to the applicant; and (3) that the evidence was material. *Webb v. State*, 232 S.W.3d 109, 114 (Tex. Crim. App. 2007).

2.      The undisclosed phone records constituted material evidence because their non-disclosure undermines confidence in the outcome of the applicant's capital murder trial. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*

3.      The Court therefore finds that the applicant's due process rights were violated by the State's failure to disclose the Dockery phone records to trial counsel.

4.      Based on the foregoing findings of fact and conclusions of law, all having full support in the record of this case and agreed to by the applicant and Respondent, the Court recommends to the Texas Court of Criminal Appeals that habeas relief be granted, that the applicant's conviction be reversed, and that the applicant be granted a new trial.

5.      Alternatively, in the event that the Texas Court of Criminal Appeals does not grant the applicant relief on the *Brady* claim advanced herein, the applicant reserves and retains all of his rights regarding each and every other claim advanced in his Application. The Court accordingly requests that, in the event the Texas Court of Criminal Appeals does not grant the applicant relief on the claim advanced herein, that the Texas Court of Criminal Appeals remand the case to this Court for further review of the other claims not made a part of these findings.

9

: 01635

CAUSE NO. 1035159-A

EX PARTE § IN THE 351ST DISTRICT COURT

§

ALFRED DEWAYNE BROWN,
APPLICANT § HARRIS COUNTY, TEXAS

## ORDER

The Court, having considered the joint submission of findings of fact and conclusions of law by habeas counsel for Petitioner and the Harris County District Attorney's Office, hereby, ORDERS the following:

THE CLERK IS HEREBY ORDERED to prepare a transcript of all papers in cause number 1035159-A and to transmit the same to the Texas Court of Criminal Appeals, as provided by Article 11.071 of the Texas Code of Criminal Procedure. The transcript shall include certified copies of the following documents:

1. all of the applicant's pleadings filed in cause number 1035159-A, including any exhibits and affidavits;

2. all of the Respondent's pleadings filed in cause number 1035159-A, including exhibits and affidavits;

3. this Court's findings of fact, conclusions of law and order granting habeas relief in cause number 1035159-A;

4. any Proposed Findings of Fact and Conclusions of Law submitted in cause number 1035159-A, including attached exhibits;

5. the court reporter's records of proceedings conducted in cause no. 1035159-A;

6. the indictment, judgment, sentence, docket sheet, and appellate record in cause number 1035159, unless they have been previously forwarded to the Court of Criminal Appeals.

10

01637

THE CLERK IS FURTHER ORDERED to send a copy of the court's findings of fact and conclusions of law, including its order, to applicant's counsel: Casey Kaplan; K & L Gates; 1717 Main Street, Suite 2800; Dallas, Texas  75201-7342 and to Respondent: Lynn Hardaway; Harris County District Attorney's Office; 1201 Franklin; Suite 600; Houston, Texas 77002-1901.

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE AGREED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN CAUSE NO. 1035159-A.

SIGNED this 18 day of ___MAY___, 2013.

MARK KENT ELLIS
Presiding Judge
351st District Court

11

: 01637



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-68,876-01

### EX PARTE ALFRED DEWAYNE BROWN

## ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS FROM CAUSE NO. 1035159A IN THE 351ST DISTRICT COURT HARRIS COUNTY

*Per curiam.*

### O P I N I O N

This is an application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071.

In October 2005, a jury found applicant guilty of the offense of capital murder committed on April 3, 2003. The jury answered the special issues submitted pursuant to Texas Code of Criminal Procedure Article 37.071, and the trial court, accordingly, set applicant's punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Brown v. State*, 270 S.W.3d 564 (Tex. Crim. App. 2008).

Applicant presents numerous allegations in his application in which he challenges the validity of his conviction and resulting sentence. In allegation V.D.3., applicant claims that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The State conceded that material exculpatory evidence was withheld from applicant. The habeas court adopted the parties' agreed findings of fact and conclusions of law and recommended that this Court grant relief.

This Court has reviewed the record with respect to the *Brady* allegation made by applicant. Based on the habeas court's findings and conclusions and our own review, we hold that the State withheld evidence that was both favorable and material to applicant's case in violation of *Brady*. *See also Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Therefore, relief is granted. We dismiss as moot applicant's remaining challenges to his conviction and sentence.

We vacate applicant's conviction and sentence, and remand the case to the trial court for a new trial or other proceeding consistent with this opinion.

Delivered: November 5, 2014

DO NOT PUBLISH